Good morning, Your Honor. Before we start the clock, I notice you all, there's more lawyers here. Are you going to be dividing time? We are not, Your Honor. Okay. All right. Then we'll start. Okay. Thank you. Your Honor, with the court's permission, I'd like to reserve three minutes for rebuttal. All right. Thank you. You can proceed. My name is Rex Heineke. I'm here on behalf of Ernst & Young. As I'm sure the Court is aware, the district court said that we had waived the right to arbitrate, to move for arbitration here. And we respectfully submit that the district court was wrong about that. In the first place, the district court really did not give, we think, sufficient weight to the standard that's applicable here. That standard, I think, is uncontested, that arbitration is favored, that a party arguing that there has been a waiver has a heavy burden of proof to show that there's been a waiver and that any doubts about waivers should be resolved in favor of arbitration. Well, you're hanging your hat on AT&T Mobility a lot. Yes. And so I guess in addressing this, why would it have been futile for Ernst & Young to pursue arbitration prior to the issuance of AT&T versus Concepcion? And why wasn't the possibility that New York law might apply in this case sufficient to defeat the futility argument? Certainly, Your Honor. Let me start with New York law, because I think we can deal with that quickly, and then I'll turn to your first question, if that's all right with the Court. Sure. With the question of New York law, the standards here are very clear. Under New York choice of law or, sorry, California choice of law rules, which apply in this case, there are two things that have to be shown. One, that the chosen state's law, that is New York, is contrary to a fundamental policy of California, and that California has a materially greater interest in the case. Well, it was clear what California law was, that these things were unenforceable, and it was equally clear New York allowed that. So you're relying on Gentry and Discover Bank. Right. And I'll come back to that. Now, does California follow the restatement second to conflicts on this point? Yes. It does? I believe it does. So that what is considered a fundamental policy would be what the restatement basically tries to embody, is that correct? I think so, Your Honor. And Gentry says that California has a strong public policy against class action waivers. So that is California's policy. And that provision of the restatement goes on to say that not only does it have to be contrary to the fundamental policy of the state, which has a materially greater interest in the chosen state, but that state also has to be the state under which would be the state whose law would be applied in the absence of an effective choice of law by the parties. Right. Would California have been that state? Yes. The case was filed here, and the case involved California plaintiffs and involved conduct here and involved allegations of, only allegations of the violation of California law. The fact still remains, and I'm very bothered. I'm very bothered by this point. That's why I think we need to spend a little time on it. Sure. You didn't even take a shot. That's true, Your Honor. I mean, you didn't take a shot. You had a choice of law clause that said New York law applied. Right. You didn't even take a shot. Exactly. I mean, why, some smart lawyer, maybe you, put that choice of law clause in that contract. Well, Your Honor, I had nothing to do with that. But we needed to show two, we need to show two things. One is that there's a square conflict between New York law and California law, and I don't really think there's a dispute about that. And the other thing is, the other part of the test is who's, which state has the greater interest. California has overwhelmingly the greater interest. New York has essentially no interest in this litigation. This looks, frankly, like just a strategic lawyer's decision by Ernst & Young not to litigate the New York choice of law clause. Sure, because we didn't think we could win it. If we thought we could have won it, it was something else. But the law was clear, and this court in the Hoffman case made it clear that we could not prevail making that kind of argument. So, I mean, that's the fundamental thing here. Let me turn to Judge Callahan's first question, which is, why did we think in the first place we couldn't win in California? Well, let's do the history of what the state of the law was. First, there was this court's decision in 2003, the Engle decision. And Engle said unequivocally that a class action waiver was unconscionable and unenforceable in California. So, starting in 2003, there wasn't any doubt that we had no viable claim to enforce the And then along comes Discovery Bank, the California Supreme Court, which adopts that same sort of rule in the context of consumer class actions. And then comes Gentry, which adopts the same rule in the context of employment class actions like this. So, under the Fisher test of what would any competent lawyer recommend to their And no contrary cases. How could we have advised our client that this was something that they had a reasonable shot of? And I think it's important also to look at what Fisher is all about. Fisher uses language that says, well, it's got to be futile. But, in fact, if you look at the facts in Fisher, the test is not, as our opponents would have it, which is absolute impossibility under any sort of circumstances. In Fisher, what was found to be futile under this intertwining doctrine, the status of the law in that case, at the time that case was filed, 1981, was that the circuits were split on the intertwining doctrine. And that in the Ninth Circuit, the status of the law was a panel had issued a decision saying in a footnote, in dicta, that it would not recognize the intertwining doctrine. And so that was what was held to be futility. Split in the circuits, and the only thing that was on point was a Ninth Circuit decision that said in dicta, well, we wouldn't do this. And Fisher says that's enough to establish futility. Well, I submit if that establishes futility, certainly a Ninth Circuit decision squarely on point, and two California Supreme Court decisions, the second one Gentry right on point, it's a labor law class action, is enough to establish futility. Otherwise, I don't see how Fisher can be upheld. Tell me about prejudice, in case we don't want to get into this quagmire. Can you win independently on prejudice and why? Yes. Well, first, Fisher says that someone who's trying to meet this heavy, stringent burden of showing you wave class actions, there are three things they've got to show. And one of them they've got to show is prejudice. Yes. So what is the prejudice here? Well, the plaintiff says we have the cost and expense of litigation. Fisher says unequivocally that is not prejudice. Second, we have to understand what happened here. The plaintiff sued in court. They did not arbitrate, even though they'd agreed to do that. And what Fisher says about that situation is, well, you really can't complain when you do that, when you go contrary to what you agreed to, because it's a self-inflicted wound. If you suffered prejudice, if you suffered harm, it's because you didn't comply with your agreement. So how can you then come in and say, oh, gee, I got hurt. You prejudiced me, when it's something that's a result of your own action. Should we stay with Fisher? I mean, it's kind of an old case. Does it really appreciate what the costs and burden of litigation is today? Well, I don't think it's changed that much since Fisher, and I also respectfully submit that this panel is bound by Fisher, that only an en banc court can overrule Fisher, not another panel. We are, but we can take care of that. So we've got time, too, here. This went on a long time. Three years. That's what Fisher was, three years. Okay, and what, is it St. Agnes? That was a lot shorter, right? Right, but realize we don't have any control over this. A plaintiff tries to make it sound like, oh, you're playing some fast and loose game, and you're calculating when you're going to do this and in what order and so on. We don't have any control over this. We don't have any control over when the Supreme Court decides the AT&T case or whether it even decides the AT&T case. We can't play that game because we don't know what's going on and what's ever going to happen. So the timing. We don't either. I'm sorry? We don't either. I understand, Joan. The timing of it is something that's simply not within our control. And similarly, there's costs in the litigation. What was our alternative? We had to defend the litigation. We couldn't just say, oh, gee, we hope someday we'll get to arbitrate this so we're not going to defend. Was there any – some of the cases talk about when the forum selected is court, you know, a lawsuit as opposed to arbitration. Was there any discovery that you got as a result of this that had it been arbitrated, it would have been different? I don't think so, Your Honor. And, in fact, if you look at the arbitration agreement, while our opponents say, oh, we were prejudiced because you could make a motion for summary judgment and we were prejudiced because you could conduct discovery, if you look at the arbitration agreement, this arbitration agreement allowed the conduct of discovery. It allowed document production. It allowed depositions. And it allowed summary judgment motion. So even if we hadn't been in court and what we were was simply an arbitration, we still would have been able to do the same sorts of things. That is, we could have conducted this discovery and we could have moved for summary judgment. So what is the showing of prejudice on this record? I submit they haven't shown any prejudice. Okay. Well, they have money. They're saying money, right? What is the plaintiff's position? The plaintiff's position is you litigated this for three years. That's prejudice. So time and money. Time and money. But I submit respectfully that Fisher says squarely that those costs and expenses of litigation are not prejudice, especially since they're self-inflicted here. Now, I think that there's some, should there, I think that there's some, I don't know, a request or what would say why shouldn't we look, this Court look to Ernst & Young's conduct in the related cases to evaluate whether it waived its right to compel arbitration of Ms. Richards? Well, Your Honor, there are a couple of things. First, the related cases were only consolidated for the purposes of class certification. Excuse me. The mic seems to be very loud. You're kind of coming in and out. It might be because you're tall. Should I raise it? Is that better? Yeah. Okay. I'm sorry. What I was saying was the only consolidation here, the court's order said expressly they were only consolidated for the purposes of class certification and nothing else. Second, a party who has an arbitration agreement and has several cases is free to waive arbitration in one case and pursue it in another case if it thinks that's beneficial to it. There's no rule that says if you have an arbitration clause, you must exercise it every time or you lose that arbitration clause. Excuse me just one second. Can you stop the clock? Is the recorder working? Because he is sort of coming in and out. The recorder is working. Okay. It's just modulating a little bit here. Should I further back be better? I don't know. I don't know. As long as it's recording, we can hear you. Well, what I was saying was there simply is no rule and it could not be the rule that a party cannot choose in one case to seek arbitration and in another case not seek arbitration. There's no rule like that. I can't imagine why one should have a rule like that. And I submit any rule like that would be utterly unworkable because you then have to go back and look at every case that party had ever been involved in and how they had moved or not moved on arbitration. All right. Did you want to reserve three minutes, did you say? I did. All right. Unless do either of my colleagues have any questions right now? No, thank you. All right. Thank you. Good morning, Your Honors. Good morning. Max Walkenflik for the appellee. Can you move your mic down a little? Thanks. Thank you, Your Honor. I think Judge Ripple put his finger on it. As this Court said in the panel decision less than six months ago in Gutierrez, arbitration may not be used as a strategy to manipulate the legal process, quoting a District of Columbia opinion. So the question is here, was that the case? Was there an attempt to manipulate the legal process by asserting arbitration for the first time, not after three years, but after six years of litigation if you consider all of these cases which were consolidated, for the first time after a dispositive motion for summary judgment was filed? Now, procedurally, Gutierrez is even further along, though. Yes, it is. Am I correct? Absolutely. It was already they had a trial and they lost, right? Absolutely. But in Gutierrez, the Court did not rely upon exclusively the fact that there had been a trial as evidence of prejudice. And, in fact, respectfully, Your Honor, if this Court were to find the absence of prejudice in the face of dispositive motion against this party, that would be the first time that I am aware of in the history of litigation under the Federal Arbitration Act, no court has found dispositive motions not to be prejudice. That's true in every circuit that has ruled on that issue, and that's almost all of the circuits, I think all but two. And we cite all of those cases in our brief. The fact is that Fisher was a very different case, and to address Judge Ripple's question, I think this Court could distinguish Fisher very easily. First of all, in Fisher, the question was not whether or not there was discovery in the case that was a self-inflicted wound and there wouldn't have been discovery in arbitration. There was a court case that was going to go forward. The plaintiff in Fisher made a claim under Section 12-2 of the Securities Acts. The case law at the time under Wilko v. Swan, and Judge Schroeder has written about that in an early opinion some time ago, required arbitration to be made or denied when there was a Federal securities case at issue. So what you had in Fisher, entirely different than this case, is you had claims that were undeniably going to appear in Federal court and be tried in Federal court, and other claims that were arguably submittable to arbitration. And so what we had in Fisher was a claim of prejudice based on the fact that the plaintiff said, well, I did some discovery just on the State law claims because I wanted a jury trial. And the Fisher court said that was a self-inflicted. But the Fisher court did not say that any discovery and certainly there were no dispositive motions in Fisher. The Fisher court did not say none of that would be prejudicial. And in fact, let's look at what the rule is and whether or not the rule, as my colleague argues for it, would be to encourage the use of arbitration as a strategy to manipulate the legal process. Because let's look at what happened if the Fisher issue goes away here, as I believe and I believe Fisher is very clear and I don't believe they, I think there are clear findings below that make it clear that they did not fail to assert arbitration. The Court said it was less, their assertions were less credible. They didn't fail to assert arbitration because of a perception of futility or a perception of difficulty of winning that case. They failed to assert arbitration. According to the factual finding below, they didn't make that case. They submitted no declaration in support of that. That's different than Gutierrez, where there were no findings below. It's different than Fisher, where there was a district court finding that there was no intention to waive arbitration. Here the finding, factual finding, which can't be reversed, absent clearly Iranian standard, is that there was an intention to waive. Now, if you look at the history of waiver, I mean, the Federal Arbitration Act changes certain things in the law, but it doesn't change the meaning of every legal principle. It doesn't change the meaning of the word waiver. And waiver for decades, if not centuries, has meant an intentional relinquishment of a known right. As my colleague admits, it is certainly a party is free to waive arbitration in one case if he chooses to. Well, but you can also get sanctioned for bringing futile actions before the court. And it was pretty clear in California that these class action waivers were being found unconscionable. And the ---- Respectfully, Your Honor, no, it wasn't, and no, it isn't. Under Gentry, it's a case-by-case analysis. If you look at the case law under Gentry, where they invalidated class action waivers, there were cases of very low-earning employees with very limited knowledge of their rights. Most of whom had problems with the English language, and the question was whether they could assert on an individual basis their right in arbitration or whether their only protection was to have a class action. Here we have ---- let's look at what the appellant says. We have a party who has $200,000 in individual damages, highly educated professional person who might assert a claim that her rights could not be vindicated in arbitration because of the class action waiver. And I will say, frankly, Your Honor, if that case were to be tried, I would find arguing that position challenging. That's not to say that I wouldn't think I could win it for a variety of reasons, particularly to the arbitration ---- Well, okay, but were all the cases against him? But you're saying he should have factually distinguished those cases, and that's how it wouldn't have been futile. Is that your argument? Respectfully, Your Honor, the cases were not against him in California. I'm having a hard time understanding that. Okay. Because in Gentry, they say that you look at the facts of the case, and you determine whether the rights could be vindicated, the employment rights in arbitration. And the questions you look at are the size of the claim, the ability of the claimant to understand their rights, and whether they could pursue those rights in arbitration. I think that case, Mr. Hunke says, that there was an unequivocal denial of a right to class action waivers, that they were stricken by California law unequivocally. That's just not true. Respectfully to Mr. Hunke, he's misinterpreting what that law is. If you read Gentry, it doesn't do that. And there is not a single case under Gentry where any party ever asserted a six-figure claim, let alone a $200,000 claim, where any party was a professional, highly educated person, and where they nonetheless struck down the class action waiver. The fact, though, is we're not just stuck with Gentry. We also have not really. Are there any out there that upheld the class action waiver under the facts that you're talking about? I did not see an opinion. I mean, I'm not aware of any. I do not believe there was. I have not found an opinion that did that. But the opinions that struck the class action waiver were different, and the language of Gentry gives a lot of flexibility. Can you give your best argument on the prejudice for your client? Well, Your Honor. What supports the prejudice finds? Yes, Your Honor. First of all, let's look at the issue in context of Fisher, because there would have to be prejudice whether there was a Fisher excuse for a late assertion or not. So the question I pose to the Court is whether, if Concepcion had never been decided, whether Mr. Heineke, after all of these years of litigation, after he lost the dispositive motions, could just step before the Court and say, well, now I want to arbitrate, whether the Court would find there was no prejudice in that case. I submit that implicitly, by the arguments that the appellants make in this Court, that they're relying on Fisher, they implicitly recognize that there would be a finding of prejudice if they just waited, lie in wait for 6 years as a strategic judgment, and then after the dispositive motion came before the Court and asked for the Court to excuse, all that happened. But now you're assuming that there's no Concepcion by your argument. If there were no Concepcion. All right. But that is kind of the elephant in the room here. No. Well, not as to prejudice, Your Honor. Because, as Fisher points out, as Gutierrez reaffirms, there are three things to prove in waiver, the knowledge of a right to arbitration, acts inconsistent with that right, and prejudice. Now, the Fisher issue only goes to whether or not the acts were inconsistent with the right. It doesn't go to whether there's prejudice. So if you had no prejudice, what your rule would establish is that every party in every case with an arbitration clause could litigate before the courts until they lost the dispositive motion, and then say, what new game? Let's have an arbitrator. We decide that same question. In Gutierrez, respectfully, I think the Court ruled unequivocally that you are not entitled to have a second bite to have the same dispositive issues presented to an arbitrator as were presented to a court. But the dispositive motion here that had been decided came after discovery and other stuff, I assume. It did. And I assume that all of that would be relevant in an arbitration as well. What does, Your Honor, mean by relevant? The discovery would probably be allowed in arbitration, although one never knows for sure. What they learned they could use in arbitration. What they learned they could use, of course. And it was the discovery of the plaintiff herself, Ms. Richards, and the statements she made in her deposition, which they alleged were grounds for dismissal of her case in its entirety. And that would certainly be admissible in the arbitration procedure. So I'm just trying to get at the prejudice if all of that time and money in that sense could be said not to have been wasted. We're not asserting. Our claim is not merely the time and money, because the case law is a little daunting at that, although, in fact, the facts of this case, where you had, you had. Well, time and money is part, so what else is part? Well, you had 15 witness statements, 17 responses to interrogatories. There are no interrogatories expressly allowed in the arbitration, although, presumably, an arbitrator has a certain amount of flexibility. You had in the class certification motion, there were 52 declarations. There were 74 exhibits. There were 12 depositions of plaintiffs and third-party witnesses. In arbitration, the agreement provides for three depositions, although, obviously, the arbitrator has some flexibility. So there is time and money that was wasted in the sense that it never would have occurred in arbitration. And that's the information. Kagan. Pardon me? Okay. But we had, you have the information. It is nonetheless true that no court has ever found that dispositive motions are not prejudice, because as the Gutierrez case states, you don't, that you should not have a party have a second bite at the same determination before an arbitrator that they lost in court. Now, I think the time and money, to address Judge Ripple's point, the time and money is significant, and I think it is very significant in this case and not governed by Fisher because of the unique procedural posture of Fisher. It is also true, also true, that the issue of, that the prejudice to this party is the years of delay. As Gutierrez points out, it's not accomplishing the purpose of the Federal Arbitration Act or the contract to have six years of litigation, then start again. And so that's exactly what they're asking for here. And, again, it does come down to prejudice, but the late assertion itself, the factual finding that they, that their claim that they made a late assertion, claim unsupported by any evidence at all, no declaration, even though we invited them to submit a declaration, shows that they just didn't take the shot for a reason, for a strategic reason. Could you lose on the class certification? As to Richards, no. We won. Okay. But it was someone else that lost then? One of the plaintiffs, Sarah Fernandez, was held to not have been an adequate class representative. And so the class she was purportedly representing, as a putative class representative of an audit class, that class was not certified. But it was not denied. It was just not certified. We sought to have another plaintiff intervene in the case so that we could address that class certification motion. Judge White denied the motion to intervene, but we then brought a subsequent action on behalf of a plaintiff named Stephen Morris. So who's in her class now? Pardon me? Who's her class? What's her class? Her class is a class of accountants, junior accountants at Ernst & Young engaged in the tax practice. As tax consultants. Okay. And it starts, you know, her the representative class starts from people in their first day of employment through their up to the level of what's called manager where they have to be certified public accountants. And so what we have in this case is a clear finding, which can't be reversed, that they did it intentionally, that they didn't take their shot, Judge Ripple, not because of any concern, any belief that that shot was futile. And it wasn't futile not merely under Gentry, but it wasn't futile under New York law, which might have applied. And, in fact, until the Hoffman case was decided, which was after the time for them to assert the arbitration right, the law in the district courts applied foreign state law rather than California law to disputes such as this. So that's, and it wasn't futile under the Federal Arbitration Act, which may well have been determined to preempt California law, as Concepcion did. It certainly wasn't futile in Concepcion. They had fought through the California law on those same arbitration agreements for many years and lost, but they took their shot. All right. You're moving into overtime, so unless my colleagues have questions, I would ask you to wrap it up in 30 seconds. Okay. Thank you, Your Honor. We believe that, with respect to the Fisher issue, there is neither an excuse for the light assertion and there's certainly prejudice, if not merely from the extensive expense and delay, but also from the determination of dispositive motions. With respect to the other adequate alternative grounds for the appeal, there's been a lot of letter writing to the Court about the D.R. Horton case. We respectfully submit that the D.R. Horton case is dispositive. Do you have any circuit authority that supports your argument? On D.R. Horton? That it should be dispositive. What's your circuit authority on that? Well, my authority on that is Kaiser Steel, which is Supreme Court authority that says if a contract is illegal, it will not be enforced. Now, the determination by D.R. Horton that's significant is not that there's not a conflict with the Federal Arbitration Act. I think that's sort of a red herring. The issue with the D.R. Horton decision is that they determine the contract to be illegal under Section 7 of the National Labor Relations Act. And under Kaiser Steel, in a lot of authority, illegal contracts will not be enforced. With respect to the issue of ---- All right. You're well into overtime. Thank you. Let me turn back to this question of opposing counsel says Fisher is a different case. Obviously, in some sense it's different, but it's not different in any important case or any important way. There was discovery there that could be used. There was discovery here that could be used. There was a ---- there were pretrial motions there. There was a summary judgment motion here. The arbitration agreement allowed for discovery, extensive discovery, allowed for summary judgment motion. So there was no prejudice by having those things go on. Also, the ruling on the summary judgment motion here was extremely limited. The Court only granted two things in our favor. First, it said, I, the trial judge, am dismissing those without prejudice to the reinstatement depending on what the California Supreme Court does. So it's not like we got summary judgment against her in this case or something. What about the class certification? Because, you know, I'm hearing him say, okay, Gutierrez v. Wells-Fargo is a different     line, and that's binding on us. So if we back it up, what ---- where are you in the proceedings? What about the ---- there was a whole class certification process that went on. Yes, there was. Right. First, Gutierrez, of course, is a case that had been trot and was on appeal. Right. I realize. It's out here. So this is somewhere back there. So how far ---- Okay. How far back is it? Yeah. I think the answer is we had no alternative. They moved for class certification. We didn't make that motion. So we had no choice but to defend because AT&T had not come down. What were we supposed to do? Just give up and say, well, we hope that some case like AT&T comes down and saves us? I mean, we really didn't have any alternative here. There's this whole thing about we had some grand strategy and we plotted and so on. It's just unrealistic. We couldn't have plotted that out if our lives depended on it. I don't care how smart we think we are. We just couldn't have possibly figured that out. I don't think anybody had figured that out until that decision came down. I think a lot of people went, whoa, really? And it was close, 5-4. It could have gone either way. So I don't think that was even something you could predict. So I don't know what we're supposed to do about class certification except to defend, given the circumstances we were confronted with. There just wasn't any alternative. Opposing counsel says, well, we didn't put in a declaration. Well, there are two things or maybe three things about that. One is we offered the district court a declaration if it could be in camera. Because what the plaintiff wants us to do is explain why in the Ho case we decided not to seek arbitration and did decide to seek it in Richards. I submit that we shouldn't have to do that because it invades the privilege. But on top of that, the test in Fisher is objective. It's what any competent attorney would do. It's not what someone says they would do or thinks they would do. It's an objective test. It's irrelevant whether I or one of my colleagues came in and said we would or wouldn't. It won't carry the day. The question is, looking at the status of the law, would you have made the motion? And I submit that given Ingle and the two California Supreme Court cases and the lack of any case, where is the case that they cite that says we're wrong not to have moved here, that we would have won? There isn't a case. All right. Thank you for your argument. Thank you. This matter will stand submitted.
judges: Schroeder, Ripple, Callahan